UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ABELL DIEUDONNE,

    Petitioner,

vs.

WARDEN NEVEN, *et al.*,

    Respondents.

_____/

2:13-cv-01395-GMN-CWH

**ORDER**

Introduction

    This action is a petition for writ of habeas corpus by Abell Dieudonne, a Nevada prisoner. The action is before the court with respect to the merits of the claims remaining in Dieudonne's petition. The court will deny Dieudonne habeas corpus relief, and will deny him a certificate of appealability.

Background

    In 2007, Dieudonne was charged, in a criminal complaint, with conspiracy to commit burglary, burglary while in possession of a firearm, conspiracy to commit robbery, attempted robbery with use of a deadly weapon, conspiracy to commit murder, and murder with use of a deadly weapon. *See* Criminal Complaint, Exhibit 2; Amended Criminal Complaint, Exhibit 3. (The exhibits referred to in this order were filed by respondents and are located in the record at ECF Nos. 19-23.) A preliminary hearing was held in a North Las Vegas Justice Court on August 2, 2007.

*See* Reporter's Transcript, Exhibit 4.  At the preliminary hearing, the State presented evidence that on December 13, 2006, Dieudonne and an accomplice, Semario McNair, conspired to enter the North Las Vegas apartment that Giovanna Simmons shared with her boyfriend, Wayne Brown, and her two young children, and rob her, that Dieudonne acted as a lookout and getaway driver while McNair carried out the robbery, and that Simmons was shot and killed.  *See id*.  The justice court dismissed the charge of conspiracy to commit murder, but bound Dieudonne over to the district court for further proceedings on the other charges.  *See id*.; *see also* Commitment and Order to Appear, Exhibit 5.

In the state district court, Dieudonne was initially charged by information with conspiracy to commit robbery, attempted robbery with use of a deadly weapon, and murder with use of a deadly weapon.  *See* Information, Exhibit 8.  On December 3, 2008, the State filed an amended information, charging Dieudonne with conspiracy to commit burglary, burglary while in possession of a firearm, conspiracy to commit robbery, attempted robbery with use of a deadly weapon, conspiracy to commit murder, and murder with use of a deadly weapon.  *See* Amended Information, Exhibit 18.

The State filed a motion to admit evidence of other crimes.  *See* Notice of Motion and Motion to Admit Evidence of Other Crimes, Exhibit 13.  Dieudonne filed a motion to suppress statements he made to the police.  *See* Motion to Suppress Defendant's Statements, Exhibit 20.  On April 13, 2009, the state district court held a hearing regarding those motions, heard argument, and denied the motion to suppress.  *See* Transcript of Proceedings, April 13, 2009, Exhibit 26.

After the court denied the motion to suppress, Dieudonne's counsel informed the court that he wished to change his plea.  *See id*.  The State then filed a second amended information, charging Dieudonne with conspiracy to commit robbery, robbery with use of a deadly weapon, and second degree murder, *see* Second Amended Information, Exhibit 24, and the parties filed a guilty plea agreement, in which Dieudonne agreed to plead guilty to the charges in the second amended information.  *See* Guilty Plea Agreement, Exhibit 25.  Dieudonne then pled guilty to those charges.

The court canvassed Dieudonne regarding his plea, and found that it was freely and voluntarily made. *See* Transcript of Proceedings, Exhibit 26.

Dieudonne's sentencing was held on August 12, 2009. *See* Transcript of Proceedings, August 12, 2009, Exhibit 31. He was sentenced to one to six years in prison for the conspiracy to commit robbery, two consecutive terms of five to fifteen years in prison for the robbery with use of a deadly weapon, and ten years to life in prison for the second degree murder, all to run consecutively. *See id*.; *see also* Judgment of Conviction, Exhibit 32. The judgment of conviction was filed on August 18, 2009. *See* Judgment of Conviction, Exhibit 32.

On September 2, 2009, the state district court, *sua sponte*, held a further hearing regarding Dieudonne's sentence. *See* Transcript of Proceedings, September 2, 2009, Exhibit 33. At the conclusion of that hearing, the judgment of conviction was amended, such that the one to six year prison sentence for the conspiracy to commit robbery would run concurrently with the sentences for the robbery with use of a deadly weapon and the second degree murder. *See id*.; *see also* Amended Judgment of Conviction, Exhibit 36. The amended judgment of conviction was filed on September 11, 2009. *See* Amended Judgment of Conviction, Exhibit 36.

On September 11, 2009, Dieudonne filed in the state district court a motion seeking modification of his sentence, or, alternatively, withdrawal of his guilty plea. *See* Motion for Modification of Sentence, Request to Transfer to Originating Department for Re-Sentencing or Alternatively, Withdrawal of Guilty Plea, Exhibit 35. The court denied that motion. *See* Transcript of Proceedings, October 19, 2009, Exhibit 48; Order Denying Motion for Modification of Sentence, Exhibit 49. Dieudonne appealed from the denial of that motion. *See* Supplemental Notice of Appeal, Exhibit 51. That appeal was denied because the notice of appeal was untimely filed. *See* Order Dismissing Appeal, Exhibit 61.

Dieudonne also appealed from both the original judgment of conviction and the amended judgment of conviction. *See* Notice of Appeal, Exhibit 39; Appellant's Opening Brief, Exhibit 63. The Nevada Supreme Court affirmed on January 27, 2011. *See* Opinion, Exhibit 72.

While his appeal was pending, Dieudonne, acting *pro se*, filed a petition for writ of habeas corpus in the state district court. *See* Petition for Writ of Habeas Corpus, Exhibit 65. He subsequently filed an additional *pro se* habeas petition in the same case. *See* Petition for Writ of Habeas Corpus, Exhibit 79. Counsel was appointed for Dieudonne, and, with counsel, Dieudonne filed a supplement to his petition. *See* Supplement to Defendant's Petition for Writ of Habeas Corpus, Exhibit 85. The court held an evidentiary hearing on February 1, 2012. *See* Transcript of Proceedings, February 1, 2012, Exhibit 87. The state district court denied Dieudonne's habeas petition in a written order filed on February 17, 2012. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 88. Dieudonne appealed. *See* Notice of Appeal, Exhibit 89; Appellant's Opening Brief, Exhibit 98. The Nevada Supreme Court affirmed on April 10, 2013. *See* Order of Affirmance, Exhibit 102.

This Court received Dieudonne's *pro se* federal petition for writ of habeas corpus (ECF No. 13) on August 5, 2013. After the matter of payment of the filing fee was resolved, the petition was filed. Dieudonne's federal habeas petition asserted -- all within Ground 1 -- several claims that he received ineffective assistance of counsel, rendering his guilty plea unknowing and involuntary. *See* Petition for Writ of Habeas Corpus (ECF No. 13).

On May 22, 2014, screening Dieudonne's habeas petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court dismissed Dieudonne's claims of ineffective assistance of counsel to the extent based on the performance of his state post-conviction counsel. *See* Order entered May 22, 2014 (ECF No. 14).

Respondents then filed a motion to dismiss, arguing that certain of Dieudonne's remaining claims were unexhausted in state court. *See* Motion to Dismiss (ECF No. 18). The Court granted respondents' motion to dismiss, in that it ruled that the following of Dieudonne's claims were not exhausted in state court:

- Dieudonne's claim that his counsel failed to explain to him that the sentence on the deadly-weapon enhancement could not run concurrently with the sentence for the underlying robbery conviction;

- Dieudonne's claim that his counsel led him to believe that he would receive a sentence of ten to twenty-five years for the second degree murder; and

- Dieudonne's claim that the judge who conducted the change-of-plea hearing said that she would sentence petitioner, but his counsel failed to move to have the case transferred back to that judge for sentencing.

*See* Order entered March 11, 2015 (ECF No. 30), pp. 2-3.  The Court found the following of Dieudonne's claims to be exhausted:

- Dieudonne's claim that his counsel coerced him into pleading guilty by pressuring him to think that his sentences would run concurrently;

- Dieudonne's claim that his counsel walked away during his plea canvass and refused to participate any further; and

- Dieudonne's claim that he did not have enough time to understand his plea.

*See id*.  The Court denied Dieudonne's motion for a stay, but granted Dieudonne an opportunity to elect whether to abandon his unexhausted claims or dismiss his entire action.  *See id*. at 6.  On March 23, 2015, Dieudonne filed a declaration of his election to abandon his unexhausted claims, and proceed in this action to litigate his exhausted claims.  *See* Declaration of Election to Abandon Claims (ECF No. 31).

Respondents filed an answer, responding to Dieudonne's remaining claims, on June 22, 2015 (ECF No. 34).  Dieudonne did not file a reply.

Discussion

28 U.S.C. § 2254(d) sets forth the primary standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

          (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

1       In the remaining claims in his habeas petition, Dieudonne claims that his federal
2  constitutional rights were violated as a result of ineffective assistance of his trial counsel, and
3  because his guilty plea was not voluntarily and intelligently entered. *See* Petition for Writ of Habeas
4  Corpus (ECF No. 13); Order entered May 22, 2014 (ECF No. 14); Order entered March 11, 2015
5  (ECF No. 30). Essentially, as the court understands his claims, Dieudonne asserts that his trial
6  counsel was ineffective for pressuring him into pleading guilty by assuring him that the sentences he
7  would receive for the robbery and the murder would run concurrently, that his counsel abandoned
8  him during the plea canvass, and that he did not have enough time to understand his plea, and as a
9  result, he did not plead guilty in a voluntary and intelligent manner. *See* Petition for Writ of Habeas
10 Corpus.

11      The Due Process Clause of the Fourteenth Amendment requires that a guilty plea be
12 voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Where a defendant is
13 represented by counsel during the plea process and enters his plea upon the advice of counsel, the
14 voluntariness of the plea depends on whether counsel's advice "was within the range of competence
15 demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). A
16 defendant who pleads guilty on the advice of counsel "may only attack the voluntary and intelligent
17 character of the guilty plea by showing that the advice he received from counsel was not within the
18 standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

19      In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two
20 prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate
21 (1) that the defense attorney's representation "fell below an objective standard of reasonableness,"
22 and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a
23 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
24 would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of
25 ineffective assistance of counsel must apply a "strong presumption" that counsel's representation
26 was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's

burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one prong, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Where a state court has adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable under AEDPA is especially difficult. *See Harrington*, 562 U.S. at 104-05.  In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)].  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  556 U.S., at 123, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent and voluntary.  *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011).  "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it."  *Brady*, 397 U.S. at 749.  Those circumstances include

8

1  "the subjective state of mind of the defendant...." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986).

2  Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (*en banc*), rev'd on other grounds, 356 U.S. 26 (1958)); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"); *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007). "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962); *see also United States v. Hernandez*, 203 F.3d 614, 619 (9th Cir. 2000) ("A plea is 'involuntary' if it is the product of threats, improper promises, or other forms of wrongful coercion."), overruled on other grounds, *United States v. Ferguson*, 560 F.3d 1060 (9th Cir. 2009). If a guilty plea is induced by promises or threats that make it involuntary or if it is not an intelligent choice among available alternatives, it is invalid. *See Alford*, 400 U.S. at 31; *Doe*, 508 F.3d at 570; *Iaea*, 800 F.2d at 866; *see also Brady*, 397 U.S. at 750 ("[T]he agents of the state may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant.").

In *Blackledge v. Allison*, 431 U.S. 63 (1977), the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge

1 accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and
2 that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431
3 U.S. at 74; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012); *Little v. Crawford*, 449
4 F.3d 1075, 1081 (9th Cir. 2006).

5     On the appeal in Dieudonne's state habeas action, the Nevada Supreme Court ruled:

> First, appellant Abell Dieudonne contends that the district court erred by denying his claim of ineffective assistance of counsel. Dieudonne has the burden of proving that counsel's performance was deficient and resulted in prejudice. *See Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996) (explaining that when the conviction is the result of a guilty plea "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" in order to satisfy the prejudice requirement (internal quotation marks and emphasis omitted)). He must prove the factual allegations underlying his claim by a preponderance of the evidence. *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 33 (2004). We give deference to the district court's factual findings regarding ineffective assistance of counsel if they are supported by substantial evidence and not clearly wrong but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).
>
> Dieudonne contended that his counsel rendered ineffective assistance by coercing him into accepting his plea agreement by "strongly pressuring" him into believing that his counts would run concurrently. The district court concluded that counsel did not pressure or coerce Dieudonne into accepting the plea and that he failed to establish deficiency or prejudice. Having reviewed the record, including counsel's testimony that he made no promises to Dieudonne that the counts would run concurrently, we conclude that counsel did not perform deficiently. Furthermore, Dieudonne did not testify during the evidentiary hearing or argue on appeal that, but for his belief that the counts would run concurrently, he would have insisted on going to trial and risked being convicted of first-degree murder and sentenced to life in prison without the possibility of parole. Accordingly, we conclude that counsel was not ineffective.
>
> Second, Dieudonne contends that the district court erred by concluding that his guilty plea was knowingly, voluntarily, and intelligently entered. "On appeal from the district court's determination, we will presume that the lower court correctly assessed the validity of the plea, and we will not reverse the lower court's determination absent a clear showing of an abuse of discretion." *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986), *limited on other grounds by Smith v. State*, 110 Nev. 1009, 1010 n.1, 879 P.2d 60, 61, n.1 (1994); *see also State v. Freese*, 116 Nev. 1097, 1106, 13 P.3d 442, 448 (2000). Having reviewed the entire record and the totality of the facts and circumstances surrounding the plea, including the district court's thorough plea canvass and Dieudonne's testimony that he knew the judge had the discretion to sentence him to consecutive counts and life in prison, we conclude

that the district court assessed the validity of Dieudonne's plea and did not abuse its discretion.

Order of Affirmance, Exhibit 102, pp. 1-3 (footnote omitted).  This Court finds the Nevada Supreme Court's ruling to be objectively reasonable.

Regarding Dieudonne's claim that his counsel coerced him into pleading guilty by pressuring him to believe that his sentences on the robbery and murder convictions would run concurrently, this Court first concludes that the Nevada Supreme Court accurately ruled that Dieudonne did not present any evidence showing that he would not have pled guilty if not for his counsel's alleged assurance that the robbery and murder sentences would run concurrently.  If he had gone to trial, Dieudonne would have been exposed to the possibility of conviction for first degree murder, and a sentence of life without the possibility of parole; whether concurrent or consecutive, the sentences he received as a result of his guilty plea were advantageous to him.

Furthermore, going to the question whether Dieudonne was misled by his attorney's advice, the written guilty plea agreement that Dieudonne signed clearly stated: "I understand that if more than one sentence of imprisonment is imposed and I am eligible to serve the sentences concurrently, the sentencing judge has the discretion to order the sentences served concurrently or consecutively." Guilty Plea Agreement, Exhibit 25, p. 3.  The written plea agreement also stated: "I have not been promised or guaranteed any particular sentence by anyone," and "I know that my sentence is to be determined by the Court within the limits prescribed by statute." *Id*. The written plea agreement stated further: "I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement." *Id*. at 5.  At the change of plea hearing, after the lengthy canvass, and after both the court and Dieudonne's counsel explained the possible sentences to him multiple times, the following exchange took place:

> THE COURT: ... Let me go back to the guilty plea agreement.  Sir, you understand the potential range of punishment under Count 3 which is the second-degree murder is a life with the possibility of parole after serving a period of 10 years or, alternatively, if Mr. Bindrup [Dieudonne's counsel] is able to convince me that

11

1     this is correct, a 10 to 25 period, and that he may argue, although it doesn't mean I'll give it to you, for concurrent time as opposed to consecutive time.  Do you understand that?

3     THE DEFENDANT:  Yes.

4         \*   \*   \*

5     THE COURT:   Yes.  Do you understand, sir, the issue of sentencing is totally up to me, although Mr. Bindrup is going to do his best to convince me that you should deserve lesser treatment than your codefendant and the minimum areas of the sentencing ranges I've discussed, sentencing's totally up to me.  Do you understand that?

8     THE DEFENDANT: Yeah.

9 Transcript of Proceedings, April 13, 2009, Exhibit 26, pp. 14-15.  At the evidentiary hearing in the

10 state habeas case, Dieudonne's counsel testified as follows:

11     Q.    And did you tell him that you believe all the counts would run concurrent?

13     A.    I told him I would fight like hell to get the counts running concurrently and that under the circumstances I felt he had a good chance of getting the counts run concurrently.  Especially at the conclusion of the plea canvass in front of Betsy Gonzalez.

15     Q.    Now, in your affidavit, you wrote that you strongly pressured the Defendant into thinking Counts 1, 2, and 3 would run concurrently.  Do you recall that?

17     A.    Yeah.  I'm seeing it right now, yes.

18     Q.    What do you mean by --

19     A.    I stand by that.

20     Q.    What type of pressure did you exert on the Defendant?

21     A.    Just you're facing potential, you know, life without or you're -- you're facing literally decades and decades in prison.  And I think this still -- this still is the best.  And I worked months and months into trying to get what I considered an acceptable or good enough offer.  And I felt it was a good enough offer for him that under the circumstances he should take it.  So I said: You really need to take this.

24         \*   \*   \*

25     Q.    Do you remember anything about what you put on record about what you had and had not promised the Defendant?

1   A.   I promised him that I would argue vigorously at the time of sentencing to persuade the Court to run the counts concurrently.

2

3   Q.   And prior to him entering the plea, had you told him that the counts would run concurrently?

4   A.   I told him from the plea memo that was not a guarantee. I had attempted to get a guarantee. I didn't have a guarantee but I told him I would try and I felt like his chances were good. I felt like his chances were even better after I made those representations during the plea canvass and I got the feeling from Judge Gonzalez that she would have run the counts concurrently. Like I had an excellent chance.

It went from my suggesting to him, yeah, you might get concurrent, I'll try to work for concurrent to after the end of the canvass because of -- just because of the judge I felt she's going to run at least one or maybe all three concurrently. I felt really good about that.

\*   \*   \*

Q.   And so in your affidavit when you say that you strongly pressured the Defendant into thinking that the Counts 1, 2, and 3 would run concurrently, what did you mean?

A.   I told him you -- since you're doing this, you're accepting responsibility, you've got some good things going for you, he had a favorable polygraph test. He was not the shooter. And so I said in front of this particular judge -- now this was more during and at the conclusion of the plea canvass, I, you know, it was like my opinion of what would happen was even bolstered after the plea was taken. But, you know, yeah, I pressured him into thinking that it was going to be concurrent. I mean, the affidavit speaks for itself. I didn't guarantee him that it was going to be concurrent, but I did indicate his chances were really good on getting concurrent. And I still feel if he had been sentenced by Judge Gonzalez that one or all of the counts would have been running concurrently. And he just happened to have the misfortune of having a bad sentencing day, unfortunately, in this department.

\*   \*   \*

Q.   Would you say that it was during or after the plea canvass that you conveyed to Mr. Dieudonne that this would run concurrent?

A.   I never guaranteed or said these counts are going to run concurrent. I just wouldn't have said that.

Q.   Okay.

A.   Okay. But I know it went from before and during the first part of the plea of having him sign it, get ready for the change of plea for me saying you're chances are good, okay, and then during the plea canvassing me making representations to the Court, I indicated to my client that I'm going to raise these factors at time of sentencing and that he has a favorable, a good chance of getting concurrent time. And then toward the end, as soon as she took it, took the sentencing,

it was then I felt the best. Then I was even more confident, hey, at time of sentencing we're going to get some concurrent time here.

Transcript of Proceedings, February 1, 2012, Exhibit 87, pp. 9-10, 14-15, 19 (The affidavit referred to in the testimony is found in the record as an attachment to Dieudonne's state habeas petition, Exhibit 35.). In light of the written guilty plea agreement that Dieudonne signed, the transcript of the change of plea hearing, and the transcript of the testimony of Dieudonne's counsel at the evidentiary hearing, this Court finds that the state supreme court reasonably ruled that Dieudonne's counsel did not perform ineffectively with respect to the advice he gave to Dieudonne regarding the possibility of him receiving concurrent sentences, that Dieudonne was not misled or improperly coerced by that advice, and that it did not render his plea unknowing, unintelligent or involuntary.

Regarding Dieudonne's claim that his counsel walked away during his plea canvass and refused to participate any further, Dieudonne does not explain in any detail how that apparently brief incident during the plea canvass rendered his counsel's performance ineffective or how it rendered his plea unknowing or involuntary. First, judging from the transcript of the change of plea hearing, it appears that this incident had little or no effect on the proceeding. Moreover, looking at the testimony of Dieudonne's counsel at the evidentiary hearing, it is plain that, because of Dieudonne's waffling regarding whether or not to accept the plea agreement, counsel simply determined at one point that it would be best to discontinue the hearing and go to trial. *See* Transcript of Proceedings, February 1, 2012, Exhibit 87, pp. 10-12. However, because Dieudonne continued to express that he wished to enter the plea agreement, counsel ultimately continued with the hearing. *See id*. The state courts reasonably rejected Dieudonne's claim that this incident rendered his counsel ineffective or his plea unknowing, unintelligent or involuntary.

Finally, this Court finds meritless Dieudonne's claim that he did not have enough time to understand his plea. First, this part of Dieudonne's claims is conclusory and unexplained, both as presented in this Court and as presented in state court. But, moreover, it is plain from the transcript of the change of plea hearing that the court went out of its way, and took an extraordinary amount of

time, to be sure that Dieudonne understood the plea agreement, and the consequences of his guilty plea, before accepting his plea. *See* Transcript of Proceedings, April 13, 2009, Exhibit 26.

In conclusion, the Nevada Supreme Court's rulings, that Dieudonne did not receive ineffective assistance of counsel, and that his guilty plea was knowing, intelligent and voluntary, were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and were not based on an unreasonable determination of the facts in light of the evidence presented. The court will deny Dieudonne's petition.

Certificate of Appealability

The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. §2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered Dieudonne's claims, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the court determines that they do not. The Court will deny Dieudonne a certificate of appealability.

15

1     **IT IS THEREFORE ORDERED** that petitioner's Petition for Writ of Habeas Corpus (ECF No. 13) is **DENIED**.

    **IT IS FURTHER ORDERED** that petitioner is denied a certificate of appealability.

    **IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT ACCORDINGLY.**

Dated this __9__ day of May, 2016.

_____
UNITED STATES DISTRICT JUDGE